UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD CHARLES GENTRY,

                Petitioner,                Case No. 1:13-cv-214

v.                                    Honorable Robert Holmes Bell

MARY BERGHUIS,

                Respondent.
_____/

## OPINION

        This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254.  On May 26, 2011, following a jury trial in the Washtenaw County Circuit Court, Petitioner Richard Charles Gentry was convicted of one count of conspiracy to commit first-degree murder, MICH. COMP. LAWS § 750.316(1)(a), two counts of assault with intent to commit murder, MICH. COMP. LAWS § 750.83, and two counts of possession of a firearm during the commission of a felony (felony firearm), MICH. COMP. LAWS 750.227b.  On June 22, 2011, Petitioner was sentenced as a fourth-offense felony offender, MICH. COMP. LAWS § 769.12, to life imprisonment on the conspiracy to commit first-degree murder conviction, concurrent to 30 to 50 years on the two assault with intent to commit murder convictions.  Those sentences, in turn, are consecutive and subsequent to two concurrent five year sentences on the felony firearm convictions.

            In his *pro se* petition, Petitioner raises four grounds for relief, the same grounds he raised in the Michigan Court of Appeals and Michigan Supreme Court on his direct appeal:

    I.        Was there sufficient identification evidence?

    II.      Was the identification admissible?

III.      Was there evidence for an arrest?

IV.      Was there ineffective assistance of counsel?

(Pet., ECF No. 1, PageID.6-10.)[1]  On September 9, 2013, Respondent filed an answer to the petition

(ECF No. 5), stating that the grounds should be denied because they are noncognizable, procedurally

defaulted, and/or without merit.  On September 17, 2013, Respondent filed the state-court record,

pursuant to Rule 5, RULES GOVERNING § 2254 CASES.  (ECF Nos. 6-21.)[2]  Upon review and applying

the AEDPA standards, the Court finds that all habeas grounds are meritless.  Accordingly, the Court

will deny the petition for failure to raise a meritorious federal claim.

### Procedural and Factual Background

During the early morning hours of June 1, 2010, Ryan Allen backed a pickup truck

into a parking space in the courtyard of the Forest Court Apartments in Ypsilanti, Michigan.  He

called for bystander Kevin McMillan, a person with whom Allen had argued a few hour earlier, to

come over to the truck.  As McMillan approached, Allen said "get him."  A gunman concealed in

the bed of the pickup sprang up and fired three shots hitting McMillan, his friend Ariel Ortiz, and

---

[1]In an attachment to the petition, Petitioner identifies two additional grounds: "Ground Five: Was there impermissbly [sic] suggestive identification [and] . . . Ground Six: Was there an [sic] transcriber's error."  (Pet., ECF No. 1, PageID.20.)  The issues were adequately presented to the state courts, but only within the context of Petitioner's presentation of his first and second grounds.  The Court will consider them as they were presented to the state courts.

[2]The Rule 5 materials include several transcripts of the trial court proceedings.  The transcripts shall be referenced as follows:

| December 8, 2010 Preliminary Examination | (Prelim. Examination Tr., ECF No. 8, PageID.__) |
| May 4, 2011 Motion Hearing Transcript | (Mot. Tr., ECF No. 13, PageID.__) |
| May 11, 2011 Final Pretrial Transcript | (Pretrial Tr., ECF No. 14, PageID.__) |
| May 23, 2011 Trial Transcript  (Volume 1) | (Trial Tr. I, ECF No. 15, PageID.__) |
| May 24, 2011 Trial Transcript  (Volume 2) | (Trial Tr. II, ECF No. 16, PageID.__) |
| May 25, 2011 Trial Transcript  (Volume 3) | (Trial Tr. III, ECF No. 17, PageID.__) |
| May 26, 2011 Trial Transcript  (Volume 4) | (Trial Tr. IV, ECF No. 18, PageID.__) |
| June 22, 2011 Sentencing Transcript | (Sentencing Tr., ECF No. 19, PageID.__). |

a nearby apartment.  The testimony was remarkably consistent regarding the events of the day.  The only dispute was the identity of the gunman.  McMillan testified that the gunman was Petitioner.  Petitioner testified that McMillan was simply wrong because Petitioner was babysitting in the Detroit area at the time of the shooting.  The jury apparently found McMillan to be the more credible witness.

## **Standard of Review**

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001).  The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d

at 655.  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 132 S. Ct. 38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and

convincing evidence.  28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## Discussion

### I.    Sufficiency of the evidence

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.*  Issues of credibility may not be reviewed by the habeas court under this standard.  *See Herrera v. Collins*, 506 U.S. 390, 401 02 (1993).  Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.  Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "'the law commands deference at two levels in this case:  First, deference should be given to the trier of fact's verdict, as contemplated by

-5-

*Jackson*; second, deference should be given to the Michigan [appellate court's] consideration of the trier of fact's verdict, as dictated by AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)). This standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency of the evidence grounds. *Id.* at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Mr. McMillan identified Petitioner as the person who sprang up from the bed of the pickup and fired the near-fatal shots. *People v. Gentry*, No. 305644, 2012 WL 4039279 at *1 (Mich. Ct. App. Sept. 13, 2012). Applying the *Jackson* standard, the Michigan Court of Appeals concluded that such evidence was sufficient to support finding the essential elements of the charged crimes beyond a reasonable doubt:

> Gentry argues that there was insufficient evidence of his identity as the assailant. We disagree. We review a challenge to the sufficiency of the evidence de novo.
>
> [W]hen determining whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.
>
> The element of identity is always an essential element in a criminal prosecution. Here, one of the victims, Kevin McMillan, identified Gentry as the assailant at trial. On appeal, Gentry raises a series of factual claims to challenge the credibility of McMillan's identification. "The credibility of identification testimony is a question for the trier of fact that we do not resolve anew." Further, "positive identification by witnesses may be sufficient to support a conviction of a crime." Accordingly, the evidence, viewed in the light most favorable to the prosecution, would allow a rational trier of fact to find that the essential element of identity was proved beyond a reasonable doubt.

*Id.* (footnotes omitted). The court of appeals cited *People v. Nowack* , 614 N.W.2d 78, 81 (Mich. 2000) for the sufficiency standard. The *Nowack* court relied on *Jackson* as the source of the

standard.   Thus, it cannot be said that the standard applied by the court of appeals was contrary to clearly established federal law.

In its application of the *Jackson* standard, the court of appeals carefully reviewed the evidence, considering that evidence in a light most favorable to the prosecution.   The court's entire analysis is quoted above.   The analysis on its face is consistent with, not contrary to, clearly established federal law.   The factual findings with respect to the evidence offered by the prosecutor appear to be reasonable.

Petitioner does not even attempt to find fault with the state court's application of the *Jackson* standard or its factual findings.   Instead, he simply views the same evidence, or evidence offered in support of his alibi defense, in a light that favors him and, therefore, reaches different conclusions.[3]   Petitioner's entire argument depends on a negative assessment of the Complainant's credibility or a positive assessment of Petitioner's credibility, those are assessments this Court is not permitted to make on habeas review.   *Herrera*, 506 U.S. at 401-02   It is Petitioner's argument, not the state court's determination, that is a patently unreasonable application of the *Jackson* standard. Petitioner's challenge to the sufficiency of the evidence has no merit.

---

[3]In one instance, Petitioner recalls Mr. McMillan's testimony differently than it is transcribed in the record. Specifically, Petitioner argues that Mr. McMillan at some point stated "Dude [meaning Petitioner] don't look like the one who shot me."  (Def/Appellant's Std. 4 Br., ECF No. 20 p. 1.)  Petitioner has not provided any evidence to support the claim other than his recollection.

II.     The admissibility of McMillan's identification of Petitioner

Perhaps recognizing the sufficiency of McMillan's identification, Petitioner next challenges whether that testimony should have been admitted at all. [4]

A.      Identification under impermissibly suggestive circumstances

Petitioner argues that McMillan's identification should have been excluded because his initial identification of Petitioner was made in improperly suggestive circumstances.[5]  By way of background, Mr. McMillan and Petitioner had never met prior to May 31, 2010.  Even on that day, they were never formally introduced; they were just all in the same place, the apartments, at the same time.  On that day, however, Petitioner was with Mr. McMillan's acquaintance Ryan Allen.  Mr. Allen referred to Petitioner as "Pops."  For that reason, Mr. McMillan believed that Petitioner was Mr. Allen's father.

Mr. McMillan saw the shooter for one-tenth of a second.  Nonetheless, when he provided a description to the detective, he said he was shot by Mr. Allen's father.  He could not say more because he simply did not know anything about the man.  Mr. McMillan first pointed out Petitioner as the shooter after an aborted attempt at a pretrial examination on November 24, 2010.  Mr. McMillan was present to testify.  He was in the courtroom because the witnesses had not been

---

[4]Petitioner challenges the admissibility of the identification because it was overly suggestive and because, he claims, he was unrepresented at the identification.  The challenges, presented as his second and fifth habeas ground in the petition, are considered together.

[5]The court of appeals determined that Petitioner had procedurally defaulted the claim by failing to provide supporting authority.  *Gentry*, 2012 WL 4039279 at *1. "If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention – whether in trial, appellate, or habeas proceedings, as state law may require – procedural default will bar federal review."  *Magwood v. Patterson*, 561 U.S. 320, 130 S. Ct. 2788, 2801 (2010).  Nevertheless, the U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits.  *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997).  *See also* 28 U.S.C. § 2254(b)(2).

ordered sequestered.  The examination did not proceed, because it was determined that Petitioner would require the appointment of new counsel because his initially appointed counsel had a conflict of interest.  Petitioner was brought into the courtroom and Mr. McMillan saw him there.  After the proceeding, Mr. McMillan informed detectives that Petitioner was the shooter.  Petitioner contends those circumstances are impermissibly suggestive.

The court of appeals considered Petitioner's challenge under state authorities interpreting the requirements of due process.  The court concluded:

> Gentry contends that the trial court erred in admitting McMillan's identification of him as the assailant because McMillan's opportunity to view Gentry at an adjourned November 24, 2010, preliminary examination was impermissibly suggestive. We disagree. "The trial court's decision to admit identification evidence will not be reversed unless it is clearly erroneous." "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made."

> Gentry has abandoned this issue because he failed to provide any authority in support of his claim.  That notwithstanding, "[a]n identification procedure that is unnecessarily suggestive and conducive to irreparable misidentification constitutes a denial of due process."  "In order to challenge an identification on the basis of lack of due process, 'a defendant must show that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification.'"  "[B]ecause an identification procedure is suggestive does not mean it is necessarily constitutionally defective."  If a witness is exposed to an impermissibly suggestive pretrial identification, his in-court identification of the defendant will be admitted if the prosecution shows by clear and convincing evidence that the witness had an independent basis to identify the defendant in court.

> The factors that a court should weigh to determine if an independent basis exists for McMillan's in-court identification include:

> (1) prior relationship with or knowledge of the defendant; (2) opportunity to observe the offense, including length of time, lighting, and proximity to the criminal act; (3) length of time between the offense and the disputed identification; (4) accuracy of description compared to the defendant's actual appearance; (5) previous proper identification or failure to identify the defendant; (6) any prelineup identification lineup of another person as

the perpetrator; (7) the nature of the offense and the victim's age, intelligence, and psychological state; and (8) any idiosyncratic or special features of the defendant.

Here, McMillan testified at the December 8, 2010, preliminary examination that he only looked directly at Gentry for approximately a tenth of a second on the day of the incident and admitted to being intoxicated at the time. The extent of McMillan's description of the assailant at that time was that he was African American and wearing a baseball hat. Moreover, nearly six months elapsed between the crime and McMillan's confrontation of Gentry before trial. Accordingly, we agree that there is some evidence that the identification procedure was suggestive.

Based on the totality of the circumstances, however, we find that "there was a sufficient independent basis for the admission of [McMillan's] in-court identification" which was proven by clear and convincing evidence. At the time of the adjourned preliminary examination, McMillan identified Gentry to police and advised another witness that Gentry did not look the same in court as he did on the night of the incident. Therefore, McMillan was able to discern a change in Gentry's appearance, who he viewed from ten to 15 feet away at the time he was shot, and explain the change. Additionally, McMillan met Gentry the day before the incident and spent numerous hours in close proximity to him. Moreover, there is no evidence that McMillan identified anyone other than Gentry as his assailant. Finally, the evidence fails to demonstrate that the police or the prosecution told McMillan that Gentry was his assailant before McMillan identified Gentry before trial. Accordingly, the identification procedure did not violate Gentry's due process rights, and there was no clear error by the trial court.

*Gentry*, 2012 WL 4039279 at *1-2 (footnotes omitted).

As a preliminary matter, to the extent Petitioner argues that the identifications were impermissibly suggestive under state law, the argument is not cognizable in this proceeding. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, RULES GOVERNING HABEAS CORPUS CASES). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S.

-10-

at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Moreover, as a matter of federal constitutional law, Petitioner has failed to demonstrate that the identification was so impermissibly suggestive that it violated the Due Process Clause.  There can be little question that Mr. McMillan's identification of Petitioner at the attempted preliminary examination was the product of suggestive circumstances.  The Supreme Court has expressly stated that such identifications are "suggestive."  *See Perry v. New Hampshire*, 132 S. Ct. 716, 727-28 (2012) ("Most eyewitness identifications involve some element of suggestion. Indeed, all in-court identifications do.").  But the fact that an identification procedure is suggestive does not, standing alone, implicate due process protections.  Rather, there must be "improper law enforcement activity" before a suggestive identification requires further scrutiny.  *Id.* at 721.[6]  Because the *Perry* Court used in-court identifications as examples of suggestive identifications that do not implicate due process protections and Petitioner offers no evidence of "improper law enforcement activity" here, Petitioner cannot show that the Michigan courts' rejection of his claims is contrary to or an unreasonable application of clearly established federal law.

---

[6]Even where the suggestive identification is the product of improper state action, the evidence might still be admitted.  The existence of improper state action simply requires further inquiry into the reliability of the identification, the type of inquiry performed by the Michigan Court of Appeals. *Perry*, 132 S. Ct. at 720.  Therefore, even if Petitioner had shown improper activity here, the Michigan court's proper analysis of the reliability of the identification would preclude Petitioner's claim.  Moreover, the *Perry* Court noted that even where suggestive identification evidence is admitted, the criminal defendant enjoys layers of protection through the right of confrontation, the right to counsel, instructions regarding the fallibility of eyewitness testimony, and the requirement that guilt be proven beyond a reasonable doubt. *Id.* at 728-29.  Petitioner enjoyed all of those protections here, although he argues he did not have the benefit of counsel at the aborted preliminary examination. *See* § II. B. *infra*.

B.      Identification while Petitioner was unrepresented

In the context of his argument regarding an overly-suggestive identification, Petitioner also claims that he was unrepresented at the adjourned preliminary examination where he was identified by Mr. McMillan. "The Sixth Amendment guarantees a right to counsel at critical states of a criminal proceeding . . . such as . . . postindictment identifications . . . ." *Kennedy v. United States*, 756 F.3d 492, 493 (6th Cir. 2014) (citing *United States v. Wade*, 388 U.S. 218 (1967)).

The trial court rejected Petitioner's contention that he was unrepresented at the November 24, 2010 proceeding.[7]  The trial court noted that Petitioner's substitute counsel appeared on November 24th.  (Mot. Tr., ECF No. 13, p. 11.)  Nonetheless, the trial court proceeded to the inquiry as to whether there was a basis for the identification independent of the suggestive, allegedly "counsel-less" November 24 identification.  The trial court concluded there was an independent basis and denied Petitioner's motion to suppress.  (*Id*., p. 16.)  The Michigan Court of Appeals upheld the trial court with regard to the independent basis, *see* § II. A. *infra*, and with regard to Petitioner's failure to show that he was unrepresented at the adjourned preliminary examination, *Gentry*, 2012 WL 4039279 *2 n. 23 ("Gentry provided no evidence that he was unrepresented at that time . . . .").

The independent basis for identification that overcomes the suggestive nature of the procedure would also overcome the fact, if indeed it were the fact, that Petitioner was unrepresented at the identification proceeding.  *See Wade*, 388 U.S. at 241 ("Application of this test in the present

---

[7]Petitioner's counsel at the time the suppression motion was filed and argued had not been Petitioner's counsel as of November 24, 2010.  (Mot. Tr., ECF No. 13, pp. 6-7.)  The prosecutor at the time the motion was argued was also not present on November 24.  (*Id*., pp. 11-12.)

-12-

context requires consideration of various factors; for example, the prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification."). The analysis of this issue by the trial court and the Michigan Court of Appeals is consistent with, and not contrary to, clearly established federal law. Moreover, the factual determinations upon which those courts rely appear reasonable on the record and Petitioner has failed to overcome their presumptive correctness with clear and convincing evidence. In short, Petitioner's Sixth Amendment challenge to his pretrial identification by Mr. McMillan has no merit.

III.     Probable cause to support issuance of the complaint and warrant

In his third ground for relief, Petitioner alleges that there was no probable cause to support his arrest. Petitioner's assertion does not provide any basis for habeas corpus relief. *See Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) (illegal arrest or detention does not void a subsequent conviction). The method by which petitioner's presence was procured at trial does not provide a basis for invalidating his criminal conviction. *See Immigration & Naturalization Service v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984) ("The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation occurred."); *Frisbee v. Collins*, 342 U.S. 519, 522 (1952); *Ker v. Illinios*, 119 U.S. 436, 444 (1886); *Browning v. Jabe*, No. 88-1307, 1990 WL 6943, at * 1 (6th Cir. Feb. 1, 1990) ("petitioner's arguments that his arrest was absent probable cause . . . [are] irrelevant, as an unlawful arrest is not a defense to a valid conviction.") (*citing*

*United States v. Crews*, 445 U.S. 463, 474 (1980)).  Accordingly, his contention, even if correct, does not entitle him to habeas relief.

IV.    Ineffective assistance of counsel

Petitioner complains that his trial counsel rendered unconstitutionally ineffective assistance.  In the Michigan appellate courts Petitioner offered numerous examples of counsel's ineffectiveness.  In his petition, he distills his complaints down to one: counsel's failure to appropriately investigate and present his alibi defense.  (Pet., ECF No. 1, PageID.19.)  Petitioner claims that his decision to testify, against counsel's advice, was simply his response to counsel's inadequate presentation of his defense.  (*Id*.)

The Michigan Court of Appeals resolved Petitioner's ineffective assistance claims as follows:

> To establish ineffective assistance of counsel, Gentry "must show that his attorney's representation fell below an objective standard of reasonableness and that this was so prejudicial to him that he was denied a fair trial."  To show prejudice, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]"  "[D]efendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel[.]"

> Gentry raises nine claims of ineffective assistance, but fails to meet the burden of establishing the factual predicate regarding five of his claims.  We have, however, reviewed those claims and find them to be without merit.  Gentry has also abandoned his claim that trial counsel was ineffective for failing to "challenge the mail evidence" by failing to brief the merits of his claim.

> Gentry also claims that while he insisted on an interlocutory appeal of the trial court's decision not to suppress McMillan's identification, defense counsel did not file the appeal and failed to adequately move to stay the proceedings until the appeal could be filed.  An interlocutory appeal, however, would have been futile because McMillan's identification was properly admitted, and "counsel is not required to advocate a meritless position."  The record further shows that defense counsel adequately argued the motion to stay the proceedings.  Thus, defense counsel's representation did not fall below an objective standard of reasonableness.

> Gentry further claims that defense counsel was ineffective for failing to subpoena the alibi defense witnesses or other unnamed witnesses. There is no record evidence regarding what testimony the witnesses purportedly would have provided.

-15-

Thus, Gentry is unable to demonstrate that but for counsel's error, "the result of the proceeding would have been different." Additionally, Gentry has failed to "overcome the presumption that the challenged action might be considered sound trial strategy." Therefore, Gentry's argument must fail.

Moreover, Gentry claims that defense counsel failed to file a proper and timely notice of Gentry's intent to present an alibi defense. Although defense counsel's assistance was ineffective when she failed to timely file the notice, reversal is not warranted because Gentry cannot show prejudice as the trial court admitted his offered alibi testimony.

*Gentry*, 2012 WL 4039279 *3 (footnotes omitted).

Petitioner claimed that at the time the shooting occurred he was babysitting in the Detroit area. His claim was supported by his own testimony and the testimony of Lakeisha Adams, Petitioner's goddaughter. Ms. Adams testified that Petitioner was at her home when she arrived between 10:00 and 11:00 p.m. on May 31, 2010. (Trial Tr. II, ECF No. 16, p. 142.) She left her children in the care of Petitioner when she left at about 2:00 a.m. (*Id.*, p. 144.) She testified that Petitioner was at her home when she returned at around 4:30 a.m. (*Id.*) Petitioner echoed Ms. Adams' testimony. (*Id.*, pp. 177-180.)

The credibility of the alibi testimony was substantially weakened by Ms. Adams detailed descriptions of the events of the day leading up to Petitioner's arrival. She recounted being called into her son's school because he had been acting up, conflict with her son's father, and their visit to the Social Security office. (*Id.*, pp. 148-150, 158-159.) The date at issue, however, was Memorial Day, a federal holiday and typically a school holiday. Moreover, the testimony left a gap in time surrounding the shooting. Thus, whether the jury concluded Ms. Adams was not credible or simply mistaken as to the date, the alibi was not sufficient to exclude the possibility of Petitioner's participation in the shooting.

-16-

The court of appeals correctly noted that Petitioner had failed to supply any evidence demonstrating the nature of the additional alibi testimony his counsel should have introduced. Petitioner attached to his appellate submission a letter from his daughter, Shaquita Coltrane, indicating that she was with Petitioner at Ms. Adams' house until approximately 2:00 a.m. (Letter, ECF No. 1-1, PageID.46.)  Ms. Coltrane's description of the events, however, is difficult to reconcile with the testimony of Ms. Adams and Petitioner.  Neither mentions that she was present. Moreover, Ms. Coltrane's testimony leaves the same damning gap left by Ms. Adams.  Petitioner also offered a letter dated April 17, 2012 from Tiso Tate, the father of Ms. Adams' children. (Letter, ECF No. 1-1 PageID.47.)  Mr. Tate's account follows that of Ms. Adams with much less detail.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of

professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

Petitioner has failed to demonstrate that his counsel rendered ineffective assistance with regard to presentation of Petitioner's alibi defense.  Although he claims she did not investigate, there is nothing in the record to support that claim.  Indeed, counsel's failure to call either Ms. Coltrane or Mr. Tato appears to have been sound trial strategy as additional witnesses would have provided no more compelling support for the alibi, but would have provided additional points of irresolvable conflict among the alibi witnesses.  As the Michigan Court of Appeals recognized, counsel's failure to present issues that do not have merit does not constitute ineffective assistance of counsel.  *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Harris v.*

-18-

*United States*, 204 F.3d 681, 683 (6th Cir. 2000).  The court of appeals' rejection of Petitioner's ineffective assistance claims is consistent with clearly established federal law.  Moreover, Petitioner has failed to overcome by clear and convincing evidence the presumption that the court's factual findings regarding counsel's assistance are correct.  Those findings are reasonable on this record.  Accordingly, Petitioner is not entitled to habeas relief on his claim of ineffective assistance of counsel.

### Conclusion

In light of the foregoing, the Court will deny Petitioner's application because it fails to present a meritorious federal claim.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve

encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

The Court finds that reasonable jurists could not conclude that this Court's denial of Petitioner's claims was debatable or wrong.  Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated: <u>December 20, 2016</u>                              <u>/s/ Robert Holmes Bell                        </u>
                                                                        ROBERT HOLMES BELL
                                                                        UNITED STATES DISTRICT JUDGE